**SO ORDERED.**

**SIGNED this 20 day of October, 2020.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| **IN RE:** | |
| **WILLIAM F. FLOYD, JR.** | **CASE NO. 20-02743-5-JNC** |
| DEBTOR | CHAPTER 11 |
| **IN RE:** | |
| **JOSEPH W. FLOYD, IV.** | **CASE NO. 20-02745-5-JNC** |
| DEBTOR | CHAPTER 11 |

**<u>OPINION ON MOTIONS SEEKING AUTHORIZATION TO MAKE TAX PAYMENTS</u>**

On September 1, 2020, the court heard argument on two substantively identical Motions for Order Authorizing Payment of Prepetition Outstanding Payment and Check (collectively the "Motions") filed August 27, 2020 by William F. Floyd, Jr. in case 20-02904-5-JNC (Dkt. 12) and by Joseph W. Floyd, IV in case 20-02905-5-JNC (Dkt. 12) (collectively, the "Debtors").[1] The hearing resulted in two orders dated September 2, 2020 denying the relief sought (20-02904-5-JNC, Dkt. 22; and 20-02905-5-JNC, Dkt. 20). This opinion reflects the further basis for those orders.

---

[1] After entry of the orders denying the relief sought in the Motions, both Debtors' voluntarily chapter 11 filings were procedurally consolidated into two preceding involuntary proceedings in which relief under chapter 11 was granted to the Debtors by consent of all parties. *See* the identical consent orders at William F. Floyd, Jr., case no. 20-02743-5-JNC, Dkt. 30; and Joseph W. Floyd, IV, case no. 20-02745-5-JNC, Dkt. 29.

**Facts**

The Debtors' Motions were filed two days after their respective chapter 11 cases were commenced. The Motions sought entry of an expedited order requiring the Debtors' prepetition banking institutions[2] to honor and pay checks drawn on the respective accounts of the Debtors and their non-filing spouses issued to the United States Department of the Treasury, Internal Revenue Service ("IRS"), in the amounts of $38,792.00 (William F. Floyd, Jr.) and $36,045.00 (Joseph W. Floyd, IV). The funds are attributable to and were intended to satisfy the liability of the Debtors and their non-filing spouses to the IRS for 2019 federal income taxes due per their tax returns for that year. The checks were issued and mailed to the IRS the week of July 13, 2020. For unknown reasons, the checks were not deposited by the IRS prior to the petition date in both cases of August 24, 2020. The Debtors asked for relief on an expedited basis because of concerns that they and their non-filing spouses will incur significant tax penalties, interests, and other costs due to the nonpayment of taxes if the checks are not promptly honored.

The Debtors assert sections 105(a), 363(b) and 507(a) of the Bankruptcy Code authorize the payment of prepetition obligations on a postpetition basis provided that the payments are supported by sound business purposes or are necessary for a successful reorganization. They contend that the relief sought in the Motions is appropriate under 11 U.S.C. § 363(b)(1), which states a bankruptcy court may authorize the "use, sale, or lease, other than in the ordinary course of business, property of the estate." The Debtors cite to the deference provided under the business judgment rule in chapter 11 for decisions made outside the ordinary course of business. Additionally, they point to section 507(a)(8), which the Debtors argue grants priority to governmental units to support an assertion that the IRS claim will eventually be paid in full in the

---

[2] William F. Floyd, Jr.'s banking institution is Truist Bank (formerly Branch Banking & Trust Company) and Joseph W. Floyd, IV's banking institution is Wells Fargo Bank, N.A.

chapter 11 cases. Finally, the Debtors maintain the common law "Doctrine of Necessity" grants equitable powers to authorize pre-plan payment of the IRS claims pursuant to 11 U.S.C. § 105(a).

In support of these position, the Debtors argue that a failure to honor the outstanding checks could subject them, and their non-filing spouses, to "potential" criminal liability under North Carolina law for issuance of a worthless check, the prosecution of which might not be prohibited by the automatic stay. 11 U.S.C. § 362(b)(1). They contend that criminal liability arising from their failure to pay prepetition debt would, under the circumstances, be "inequitable and run contrary to the spirit of the Bankruptcy Code." The Debtors also state that the payments to the IRS are necessary because they and their spouses will become subject to additional and unnecessary financial penalties and interest associated with unpaid income taxes assessed for the tax year ending December 31, 2019 if not paid before the final tax deadline of October 15, 2020.

## ANALYSIS

**A.    The Pre-Confirmation Payment of a Prepetition Debt Is Not Authorized Under 11 U.S.C. § 363(b) or 11 U.S.C. 507(a)(8).**

Pursuant to section 363(b)(1) of the Bankruptcy Code, and upon court approval, a chapter 11 debtor-in-possession may be authorized to use, sell or lease property of the estate[3] outside of the ordinary course of business. In bankruptcy proceedings, the term "ordinary course of business" is used statutorily to refer to the use, sale or lease of estate property as being either "in" or "outside" of "the ordinary course of business." *In re Berry Good, LLC*, 400 B.R. 741, 745-46 (Bankr. D. Ariz. 2008) ("Although the debtor in possession or trustee may use property of the estate in the ordinary course of business, it does not have the right to pay prepetition claims, which

---

[3] Although not defined by the Bankruptcy Code, "property of the debtor" is best understood to mean property that would have been part of the estate had it not been transferred. Its meaning is coextensive with its postpetition analog "property of the estate," which includes all of the debtor's legal or equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Since a debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate" and, likewise, not "property of the debtor."

would violate the Code's policy of equal treatment of similarly situated creditors. Generally, payment of such claims must await confirmation of the plan.") (quoting Hon. Joan N. Feeney, Bankruptcy Law Manual § 11A:25 (Thomson/West 2008)). The Bankruptcy Code does not explicitly authorize courts to allow preferential payment of pre-petition obligations in spite of the priority scheme or outside of a confirmed plan of reorganization. *In re FCX, Inc.*, 54 B.R. 833 (Bankr. E.D.N.C. 1985) (citing *In re B&W Enters., Inc.*, 713 F.2d 534, 537 (9th Cir. 1983) (holding "absent compelling reasons, we deem it unwise to tamper with the statutory priority scheme devised by Congress").

The Fourth Circuit has held that section 363(b)(1) can, under certain circumstances, permit the approval of non-ordinary course, pre-confirmation agreed transactions or contracts to proceed postpetition if the movant establishes a good and sound business reason for the pre-confirmation proposed use, sale, or lease of the property. *In re Taylor*, 198 B.R. 142, 156-57 (Bankr. D. Md. 1996) (holding the debtor had failed to meet the requirements of the sound business purpose test and, therefore, a pre-confirmation sale of the nursing home assets was premature); *In re Slate*, No. 14-03302-5-RDD, 2014 WL 4825365 at *2 (Bankr. E.D.N.C. Sep. 29, 2014).

In *Slate*, the court held that the debtors showed by a preponderance of the evidence an exercise of sound business judgment justifying the continuation of pre-confirmation lease agreements. *Id.* at *8. In making the determination of whether a satisfactory business reason effects the use, sale or property under section 363, it applied the so-called "*Lionel* factors," supplemented since by the *General Motors* decision. *Id.* at *5. The following factors were applied:

      a) the proportionate value of the asset to the estate as a whole;
      b) the amount of elapsed time since the filing;
      c) the likelihood that a plan of reorganization will be proposed and confirmed in the near future;
      d) the effect of the proposed disposition on future plans of reorganization;

> e) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property;
> f) which of the alternatives of use, sale or lease the proposal envisions;
> g) whether the asset is increasing or decreasing in value;
> h) Does the estate have the liquidity to survive until confirmation of a plan?
> i) Will the sale opportunity still exist as of the time of plan confirmation?
> j) If not, how likely is it that there will be a satisfactory alternative sale opportunity, or a stand-alone plan alternative that is equally desirable (or better) for creditors?
> k) Is there a material risk that by deferring the sale, the patient will die on the operating table?

*In re Slate,* 2014 WL 4825365, at *5-6 ; *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Gen. Motors Corp.*, 407 B.R. 463, 490-91 (Bankr. S.D.N.Y. 2009).

Unlike the debtors in *Slate*, here the Debtors fail to articulate a good *business* reason for the use of estate funds to pay the pre-petition claims of the IRS outside priority and confirmation of the plan. The Debtors point to potential criminal liability and additional interest and penalties associated with the failure to honor the outstanding checks. However, all "gap" non-honored checks carry this risk, and no showing has been made that the Debtors intentionally presented checks without sufficient funding. In fact, the pleadings indicate that the Debtors fully intended to pay the tax debt prepetition, and only the failure of the IRS to process the tax returns in a prompt manner created the present situation. However, the debtors are not privy to the thoughts of the IRS in this matter. The IRS could be considering an audit or other action. Its motives are unknown. The Debtors' assertion of possible criminal liability is far too remote, speculative, and unsupported by pleadings or evidence to be considered.

In addition, the Debtors did not establish that the tax returns had been accepted as accurate by the IRS, or that the payment of the pre-petition tax claims would bring value to other creditors in the cases, directly or indirectly. The Debtors maintained that because the IRS claim (if the checks are not honored) will have tax priority status under section 507(a)(8) of the Bankruptcy Code ahead of general unsecured claims, honoring the checks now will save time and

administrative expenses that likely will be incurred later in the case on "a claim that will get paid anyway." However, the Debtors have not shown how other creditors will be affected, or if the presented claim is even accurate. Given that the Debtors are accused of masterminding and perpetuating a prepetition multi-million dollar fraudulent financial pyramid scheme (commonly referred to as a "Ponzi Scheme"), the Debtors' actual tax and unsecured creditor liability is extremely speculative. Without compelling facts, certainly not available two days into the chapter 11 cases, no evidence of an adequate business reason or basis has been or even could be sufficient to bypass the usual confirmation procedure pursuant to section 363(b)(1).

**B. Relief Pursuant to 11 U.S.C. § 105(a) or the Doctrine of Necessities Is Not Warranted.**

Having failed to support the payment of prepetition tax claims prior to plan confirmation under section 363(b)(1), the Debtors next look to section 105(a). One of the fundamental pillars of the Bankruptcy Code is that prepetition unsecured creditors' claims are satisfied on an equal basis pursuant to an approved plan. Prepetition unsecured claims do not get paid until all parties have had an opportunity to file proofs of claim and priority claims can be sorted out from general claims. Absent statutory dictates to the contrary, equal claims get equal treatment; thus, unpaid state income tax priority claims are on par with unpaid federal income tax claims, but behind certain other priority tax claims such as liability for unpaid wages or trust fund liability. Section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also Arrowsmith v. Lemberg Law, LLC (In re Health Diagnostics Lab., Inc.)*, 571 B.R. 182, 192 (Bankr. E.D. Va. 2017) (stating that section 105(a) is a "broad grant of power" (quoting *Caesars Entm't Operating Co. v. BOKF, N.A. (In re Caesars Entm't Operating Co.)*, 808 F.3d 1186, 1188 (7th Cir. 2015))). Under section 105 the court can permit pre-plan payment of a pre-

petition obligation when essential to the continued operation of the debtor. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989). Nevertheless, "section 105 may not be used as a vehicle to discriminate among priority claims when there is no compelling business need for such discrimination." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. at 177). Section 105 may supplement but it does not replace, scramble, or change other provisions of the Bankruptcy Code.

The ability of a Bankruptcy Court to authorize early payment of pre-petition debt when needed to facilitate the rehabilitation of the debtor was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 27 L. Ed. 117, 1 S. Ct. 140 (1882), and is commonly referred to as the "doctrine of necessity" rule.[4] The present day application of the doctrine of necessity remains largely unchanged from the reasoning and application in *Miltenberger*. *See In re Lehigh & New Eng. Ry.,* 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'doctrine of necessity' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."). This rule recognizes the existence of, under certain circumstances, the judicial power to authorize payment of certain prepetition claims before completion of the reorganization process where necessary to the reorganization. *See In re NVR L.P.*, 147 B.R. at 127 (citing *In re Ionosphere Clubs, Inc.*, 98 B.R at 177) ("Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (indicating that, "to justify

---

[4] The United States Supreme Court first articulated the doctrine of necessity over a century ago, in the *Miltenberger* case, where it affirmed an authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *Miltenberger*, 106 U.S. at 309-14.

7

payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process").

The Fourth Circuit has construed the Bankruptcy Code as generally not permitting a distribution to unsecured creditors in a chapter 11 proceeding outside of a confirmed plan of *Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987):

> 11 U.S.C. § 1121 provides for the filing of a plan of reorganization. Sections 1122-1129 set forth the required contents of a plan, the classification of claims, the requirements of disclosure of the contents of the plan, the method for accepting the plan, any modification thereof, the hearing required on confirmation of the plan and the requirements for confirmation. The clear language of these statutes, as well as the Bankruptcy Rules applicable thereto, does not authorize the payment in part or in full, or the advance of monies to or for the benefit of unsecured claimants prior to the approval of the plan of reorganization.

*Id.* at 302.

Despite the demonstrated disapproval of pre-confirmation payments to unsecured creditors in the Fourth Circuit, the Debtors request that the *Mabey* holding be ignored and the prepetition outstanding checks to the IRS be honored pursuant to section 105(a) and the doctrine of necessity under an unexplained equitable exception. Although not clearly addressed in *Mabey*[5], a deviation is allowable only on a narrow basis, such as when a debtor's business cannot remain open because of a true emergency, and the only alternatives are to authorize the early payment or shut down the business and insure no return to creditors outside of nonoperating liquidation. *See In re Universal Fin., Inc.*, 493 B.R. 735, 737-38 (Bankr. M.D.N.C. 2013). Consequently, if it exists at all, the doctrine of necessity requires dire, extraordinary, and rare circumstances, such as an immediate demise of a viable business or the protection of valuable assets.

## CONCLUSION

---

[5] Courts in the Fourth Circuit have assumed that the doctrine of necessity was not directly at issue in *Mabey*. *See In re NVR L.P.*, 147 B.R. at 128 n.2.

In the instant case, no such showing has been made. The contention of "potential" criminal liability is too hypothetical, remote, and speculative to justify invoking the doctrine of necessity rule. Prepetition debts owed to taxing authorities are not uncommon in chapter 11 cases, and no evidence was presented that immediate, pre-confirmation payment to the IRS for pre-petition taxes is an extraordinary circumstance likely resulting in a major loss of other chapter 11 assets, or the case becoming an exercise in futility without hope of plan confirmation. The relative order of priority of claims found throughout the Bankruptcy Code must remain intact while creditors and other parties in interest are given an ample opportunity to assert and enforce their payment rights. Due process demands no less. For the reasons specified, the Debtors' requests to authorize honor of the subject checks payable to the IRS were and are denied.

**END OF DOCUMENT**